**STERLING FACTORS, INC., Appellant,**

v.

**Michael W.J. WHELAN, Debtor/Appellee.**

**Sterling Factors, Inc., Appellant,**

v.

**Edward T. Schaner, Debtor/Appellee.**

Nos. Civ.A. Nos. 1:99CV1961JOF, 1:99CV1962JOF.
Bankruptcy Nos. 98–73772–JB, 98–73836–JB.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 25, 2000.

Steven Meyer Winter, J. Bertram Levy, Mark I. Sanders, Weinstock & Scavo, Atlanta, GA, for appellant.

John R.M. Whelan, Stone Mountain, GA, for appellee.

## ORDER

FORRESTER, District Judge.

This matter is before the court on Sterling Factors Inc.'s dual appeal from the judgment of the Bankruptcy Court for the Northern District of Georgia and Appellees Michael W.J. Whelan's and Edward T. Schaner's motions to dismiss.

### I. Statement of the Case

Appellant Sterling Factors, Inc. ("Sterling"), brings the instant appeal challenging the bankruptcy court's refusal to grant summary judgment in its favor against Appellees Michael W.J. Whelan and Edward T. Schaner on the issue of the nondischargeability of a debt obtained by fraud pursuant to 11 U.S.C. § 523. Sterling claims that the bankruptcy court erroneously failed to give preclusive effect to a Georgia state court judgment rendered in its favor on a state claim of fraud against Whelan and Schaner.

Sterling explains the following facts in support of its appeal. On July 9, 1998, the Superior Court of DeKalb County entered judgment in favor of Sterling on a fraud claim under Georgia law against Whelan and Schaner in *Sterling Factors, Inc. v. Craftmasters, Inc., et al.*, Civil Action No. 96–1436–3. Default was entered on behalf of Sterling after a period of fruitless attempts by the court and Sterling to obtain discovery responses from defendants Whelan and Schaner. Sterling was awarded default judgment in the amount of $748,244.31. After receiving notice of the judgment against them, Whelan and Schaner filed petitions for bankruptcy under Chapter 7 of the Bankruptcy Code. Sterling filed complaints with the bankruptcy court seeking to exempt from dischargeability the debts fraudulently incurred by Whelan and Schaner pursuant to 11 U.S.C. § 523(a)(2), (a)(4), and (a)(6). On March 10, 1999, Sterling moved for summary judgment on its complaints in the bankruptcy court. In an Order entered June 30, 1999, the bankruptcy court denied Sterling's motion.

The bankruptcy court addressed the very issue raised by Sterling in the instant appeal: whether the doctrine of collateral estoppel applied to entitle Sterling to summary judgment on its dischargeability claims. *See In re Whelan*, 236 B.R. 495 (Bankr.N.D.Ga.1999) (Bihary, J.). Before addressing the merits of Sterling's summary judgment motion, however, the bankruptcy court found questions raised by the parties regarding the facts leading to the entry of default judgment by the DeKalb County Superior Court and thus held a hearing addressing those matters. *Id.* at 498. The bankruptcy court set forth the following facts.

Sterling filed its original complaint against Appellees Whelan and Schaner, along with other defendants, in the Superior Court of DeKalb County in January 1996 asserting five causes of action arising out of the financing of a construction project. *Id.* Whelan and Schaner filed an answer, and discovery commenced. In March 1997, Sterling amended its complaint to add two additional counts and moved to reopen discovery. *Id.* The state court granted Sterling's request for additional discovery on July 3, 1997, and on July 8, 1997, Sterling served defendants Whelan and Schaner with interrogatories and requests for production of documents. *Id.* Counsel for both parties thereafter ap-

parently agreed to extend discovery for an additional 60 days, until October 30, 1997, and composed a consent order to that effect. *Id.* at 499. The copy of the consent order extending discovery submitted by the parties, however, was unsigned and undated. *Id.* at 499 n. 2.

Despite the alleged agreement between the parties to extend discovery, counsel for Sterling submitted a letter to counsel for Whelan and Schaner on October 8, 1997 stating that Whelan's and Schaner's responses to discovery were "long overdue" and threatening to file a motion to strike their answers if such responses were not filed within three days. *Id.* at 499. On October 22, 1997, Sterling filed a motion with the state court requesting that the court strike the answers of Whelan and Schaner, or in the alternative that the court award sanctions and compel discovery responses. *Id.* In its brief accompanying its motion to strike, Sterling requested a hearing on the matter. *Id.* The court did not hold a hearing, however, but instead signed the order to strike and entered default on December 11, 1997. *Id.*

The bankruptcy court found the following facts relevant in explaining the failure of the state court to hold a hearing prior to entering default. The state court's law clerk submitted an affidavit explaining that counsel for Sterling contacted her sometime in November 1997 to ask whether its "request for oral argument" had been granted, and the law clerk ascertained from the docket that defendants Whelan and Schaner had not filed a written response to Sterling's motion to strike. *Id.* at 500. The court's law clerk called counsel for Whelan and Schaner to inquire about the lack of response, and when she received no return call, she contacted counsel for Sterling and requested a proposed order striking the answers of defendants Whelan and Schaner and granting

default in favor of Sterling. *Id.* Such a proposed order was submitted, and the court signed the order on December 11, 1997.

Counsel for Whelan and Schaner submitted an affidavit to the bankruptcy court in which he explained that Whelan and Schaner had planned to respond to Sterling's motion to strike at the hearing which was expected to be scheduled. *Id.* As to the telephone message from the court's law clerk, counsel for Whelan and Schaner testified that a message was recorded on his answering machine on December 10, 1997 informing him that action would be taken the next day, but that he did not receive the message until after December 11, 1997 because he was out of the office. *Id.* Counsel filed a notice of appeal immediately, but the appeal was denied as interlocutory because the issue of damages remained outstanding in the Superior Court. *Id.*

On July 9, 1998, Sterling submitted an affidavit to the Superior Court claiming damages in the amount of $717,877.81 and attorneys' fees in the amount of $30,366.50. *Id.* On that same day, the court issued default judgment as to Counts IV, VI and VII of Sterling's amended complaint[1] in favor of Sterling in the amount of $748,244.31. *Id.*

Counsel for Whelan and Schaner never received a copy of either the July 9, 1998 affidavit claiming damages or the July 9, 1998 order entering judgment against his clients. *Id.* Counsel claimed before the bankruptcy court that he made periodic reviews of the file in the Clerk's office for the DeKalb County Superior Court and eventually discovered the July 9, 1998 order in August 1998, after the time for appeal had expired. *Id.* Counsel for Whelan and Schaner filed petitions for bank-

---

1. Count IV of Sterling's amended complaint stated a cause of action for fraud against Whelan and Schaner along with additional defendants. Counts VI and VII alleged that damages could be sought against defendants Whelan and Schaner in their individual capacities by piercing the corporate veil of two corporate defendants in which Whelan and Schaner were shareholders.

ruptcy on behalf of his clients on August 13, 1998 and August 17, 1998.

Sterling appeals the bankruptcy court's denial of its motions for summary judgment, stating the issues on appeal as follows: (1) whether an individual found to have willfully failed to comply with a discovery process may relitigate issues adjudicated in default judgment entered by the Georgia Superior Court; (2) whether the bankruptcy court erroneously denied Sterling's motion for summary judgment on its claim of nondischargeability under 11 U.S.C. § 523.

## II. Discussion

### A. *Motions to Dismiss*

■ Appellees Whelan and Schaner move to dismiss Appellant Sterling's actions on the basis of an untimely filing. Rule 8002 of the Federal Rules of Bankruptcy Procedure provides the rules for filing a notice of appeal in a bankruptcy case. The rule requires that a notice of appeal shall be filed "within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R.Bankr.P. 8002(a). The ten-day rule is strictly construed; the district court has no jurisdiction over an untimely filed appeal. *See In re Morrow,* 564 F.2d 189, 190 (5th Cir.1977); *Veltman v. Whetzal,* 93 F.3d 517 (8th Cir.1996); *In re Fellows,* 19 F.3d 245 (5th Cir.1994); *In re Revco D.S., Inc.,* 996 F.2d 1216 (6th Cir.1993).

Appellees assert that because the judgment of the bankruptcy court denying Sterling's motion for summary judgment was entered on June 30, 1999, Sterling had only ten days from that date in which to file a notice of appeal. The tenth day after June 30, 1999, July 10, 1999, fell on a Saturday. Appellees thus concede that Appellant had until Monday, July 12, 1999, to file its notice of appeal. *See* Fed. R.Bankr.P. 9006(a). The dispute between the parties lies with the issue of whether Appellant filed its notice of appeal on July 12, 1999 or whether the appeal was instead filed on July 13, 1999.

Whelan and Schaner assert that Sterling's notice of appeal was filed on July 13, 1999. They submit as proof of their contention a file-stamped copy of the notices of appeal filed by Sterling with the bankruptcy court which were both originally stamped "July 13, 1999" but over which there is handwriting changing "July 13" to "July 12." Whelan and Schaner also submit a copy of a receipt issued for the filing fees charged for Sterling's two appeals which is dated July 13, 1999. Finally, Whelan and Schaner submit that the certificates of service accompanying the notices were dated July 12, 1999, but that the metered postage on each envelope shows that the date of posting was July 13, 1999.

In response to Appellee's motion to dismiss, Appellant submits the affidavit of J. Bertram Levy, counsel for Sterling, who explains that Sterling's notice of appeal was delivered to the Clerk's office for the Bankruptcy Court for the Northern District of Georgia on July 12, 1999 by a courier. Counsel claims that it was later discovered that "July 13, 1999" had been erroneously stamped on the papers filed on July 12, 1999. The Clerk's office acknowledged its error and accordingly adjusted the date of filing to reflect the proper date of July 12, 1999. Sterling further relies upon the fact that the docket of the bankruptcy court shows that the notice of appeal in both actions was filed on July 12, 1999. Appellees do not reply to Appellant's response.

■ The court finds that it is evident from the record that Sterling's notice of appeal was properly filed within the ten-day period under Rule 8002(a). Although there was clearly an error within the Clerk's office, the file-stamped copies of Sterling's notices of appeal are altered in the record to reflect a filing date of July 12, 1999, and the change is initialed by the Clerk. The docket sheet also reflects that the Clerk deemed the notices filed on July 12, 1999 rather than July 13, 1999. Final-

ly, counsel for Sterling has submitted an affidavit testifying to the fact that the notices were in fact filed on July 12, 1999, and Appellees have not refuted that testimony.

Because Appellant Sterling filed its notices of appeal in compliance with the ten-day period set forth in Fed.R.Bankr.P. 8002(a), Appellees' motions to dismiss are DENIED.

### B. *Merits of Appeal*

Sterling has filed a complaint in the bankruptcy court pursuant to 11 U.S.C. § 523 seeking an order by the court excepting its debt from discharge. Section 523 provides for certain debts to be excepted from the general discharge granted to an individual debtor pursuant to 11 U.S.C. §§ 727, 1141, 1228(a), 1228(b), and 1328(b). 11 U.S.C. § 523(a). Because Appellees Whelan and Schaner petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code, the bankruptcy court is authorized to grant a discharge of their debts pursuant to 11 U.S.C. § 727 absent a finding that those debts are nondischargeable under § 523.

Sterling alleged in its complaint that its debt qualified for an exception from discharge under § 523(a)(2), (a)(4), and (a)(6). Subsection (a)(2)(A) provides for an exception from discharge for a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). Subsection (a)(4) provides for an exception "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Subsection (a)(6) sets forth an exception for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

Sterling contends that the bankruptcy court was bound by the doctrine of collateral estoppel to apply the judgment of the Superior Court of DeKalb County to its claim of nondischargeability under § 523. Sterling asserts that if the judgment of the state court had been given preclusive effect, its entitlement to an exception from dischargeability would have been established in the bankruptcy court.

The doctrine of collateral estoppel prohibits relitigation of issues already adjudicated by a valid and final judgment of another court. "It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court." *In re Bilzerian,* 100 F.3d 886, 892 (11th Cir.1996); *see also Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Specifically, a default judgment issued by a state court may have collateral estoppel effect in a bankruptcy proceeding to prevent relitigation of issues underlying the determination of dischargeability. *See In re Bush,* 62 F.3d 1319, 1322–25 (11th Cir. 1995). In determining whether the doctrine of collateral estoppel applies in a particular case, the bankruptcy court applies the law of the court issuing the prior judgment. *See In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993). "While collateral estoppel may bar a bankruptcy court for relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.* at 676.

The following elements are required to establish a claim of collateral estoppel under Georgia law: (1) There must be an identity of issues between the first and second actions; (2) the duplicated issue must have been actually and necessarily litigated in the prior court proceeding; (3) determination of the issue must have been essential to the prior judgment; and (4) the party to be estopped must have had a full and fair opportunity to litigate the issue in the course of the earlier proceeding. *See In re Graham,* 191 B.R. 489,

495 (Bankr.N.D.Ga.1996) (Drake, J.) (drawing four individual elements from various decisions of Georgia courts); *In re Gunnin*, 227 B.R. 332, 336 (Bankr.N.D.Ga. 1998) (Bihary, J.). The bankruptcy court in the instant case applied the above four factors to Sterling's collateral estoppel claim. *Whelan*, 236 B.R. at 501.

■ The district court reviews a bankruptcy court's factual findings for clear error. *See* Fed.R.Bankr.P. 8013 ("Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses"); *see also In re Club Associates*, 951 F.2d 1223, 1228 (11th Cir. 1992). "On an appeal the district court ... may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed.R.Bankr.P. 8013. The bankruptcy court's determinations of law are reviewed by the district court *de novo*. *See In re Goerg*, 930 F.2d 1563, 1566 (11th Cir.1991); *In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993). The court will review the bankruptcy court's findings as to each element of the Georgia collateral estoppel test in turn.

### 1. *Identity of Issues*

The bankruptcy court initially addressed whether there was a proper identity of issues between the judgment of the state court and the claims raised in Sterling's bankruptcy appeal. As to Sterling's claims brought pursuant to 11 U.S.C. § 523(a)(4) and (a)(6), the court found no identity of issues. *Whelan*, 236 B.R. at 501. The court reasoned that the claims asserted against defendants Whelan and Schaner in the state litigation contained neither elements of "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny," as required by § 523(a)(4), nor elements of "willful and malicious injury ... to another entity or to the property of another entity" as required by § 523(a)(6). *Id.* The court accordingly

denied Sterling's summary judgment motion as to its 11 U.S.C. § 523(a)(4) and (a)(6) claims and continued to consider only its § 523(a)(2) claim.

In the instant appeal, Sterling argues the applicability of the doctrine of collateral estoppel only as to its claim for an exception to discharge pursuant to 11 U.S.C. § 523(a)(2)(A); it appears that Sterling has abandoned on appeal its original assertion of an entitlement to relief under § 523(a)(4) and (a)(6). The court will accordingly construe the instant appeal to assert only that the bankruptcy court erred in denying Sterling's motion for summary judgment as to its claim brought pursuant to 11 U.S.C. § 523(a)(2).

■ The bankruptcy court acknowledged that Sterling's fraud claim brought in state court alleged elements sufficient to establish a claim for fraud under 11 U.S.C. § 523(a)(2)(A). *Whelan*, 236 B.R. at 502. In order to prove that a debt was obtained by fraud under § 523(a)(2)(A), a creditor must show: (1) that the debtor made a false representation with the intent to deceive the creditor; (2) that the creditor relied on the representation; (3) that the reliance was justified; and (4) that the creditor sustained a loss as a result of the representation. *See Bilzerian*, 100 F.3d at 892; *St. Laurent*, 991 F.2d at 676. The tort of fraud under Georgia law requires: (1) a false representation made by the defendant; (2) which the defendant knew was false; (3) made with an intent to deceive the plaintiff; (4) justifiable and detrimental reliance by the plaintiff on such representation; and (5) damages suffered by the plaintiff as a result. *See Crawford v. Williams*, 258 Ga. 806, 375 S.E.2d 223 (1989); *Lister v. Scriver*, 216 Ga.App. 741, 745, 456 S.E.2d 83 (1995); *Lykins v. Nationwide Mut. Ins. Co.*, 214 Ga.App. 577, 579, 448 S.E.2d 716 (1994).

■ The court finds the requirements for a fraud claim under Georgia law sufficiently identical to the elements required for a showing of fraud pursuant to 11

U.S.C. § 523(a)(2)(A) to meet the first prong of the collateral estoppel test. *See also St. Laurent*, 991 F.2d at 676 (reaching the same conclusion under Florida law); *In re Hooks*, 238 B.R. 880, 885 (Bankr. S.D.Ga.1999) (Dalis, C.J.).

### 2. *Actual Litigation*

The bankruptcy court did not explicitly address the second prong of the collateral estoppel test, but instead implicitly found the "actual litigation" requirement satisfied, stating that "[t]he key issue in these summary judgment motions revolves around the fourth element, i.e., whether defendants had a full and fair opportunity to litigate the issue in state court." *Whelan*, 236 B.R. at 501. Appellees Whelan and Schaner do not contend in their response to Sterling's appeal that the bankruptcy court erred in finding the "actual litigation" prong satisfied.

 Georgia courts have recognized default judgment as a decision on the merits. *See Butler v. Home Furnishing Co.*, 163 Ga.App. 825, 296 S.E.2d 121 (1982); *Fierer v. Ashe*, 147 Ga.App. 446, 249 S.E.2d 270 (1978). At least two bankruptcy courts within the Eleventh Circuit have accordingly found the "actual litigation" requirement for purposes of a bankruptcy dischargeability proceeding satisfied by a default judgment rendered by a Georgia court. *See Graham*, 191 B.R. at 495; *Hooks*, 238 B.R. at 885. The court finds that the bankruptcy court did not err in finding the second prong of the Georgia collateral estoppel test satisfied.

### 3. *Necessity of Issue to Outcome*

The bankruptcy court denied Sterling's summary judgment motion on the ground that the state court had failed to apportion damages among the three counts upon which default judgment was granted. *Whelan*, 236 B.R. at 501–02. The court reasoned that the lack of designation in

the state court rendered a proper analysis of Sterling's collateral estoppel claim impossible.

The bankruptcy court relied upon the Eleventh Circuit decision *In re St. Laurent*, 991 F.2d 672 (11th Cir.1993). In that case, a debtor appealed the determination of a bankruptcy court that a punitive damage award arising from a state court finding of fraud constituted a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A). The bankruptcy court in *St. Laurent* had applied the doctrine of collateral estoppel to conclude that the entire debt was the product of fraud and as such was nondischargeable. In applying the third element of the four-part test required to establish a claim of collateral estoppel,[2] the court considered whether the determination of the issue in the prior litigation was a "critical and necessary part of the judgment." *Id.* at 676. The court noted that "[i]f the judgment fails to distinguish as to which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *Id.* The court in *St. Laurent* found that the plaintiffs in the state court action had based their request for punitive damages solely on their cause of action for fraud and found that the state court based its punitive damage award explicitly upon its finding of fraud. *Id.* at 676–77. The court concluded that "because the punitive damages awarded ... were unavailable absent an independent finding of fraud, the rendering court's determination that St. Laurent defrauded ... was necessary and critical to its judgment." *Id.* at 677.

 In the instant case, default judgment was granted by the state court in Sterling's favor on Counts IV, VI and VII of its amended complaint. The bankrupt-

---

**2.** The court notes that the elements of collateral estoppel applied in *St. Laurent* were drawn from Florida law, the law of the state

where the prior judgment was rendered. 991 F.2d at 676.

cy court found that although Count IV alleged a cause of action for fraud on the part of Whelan and Schaner sufficient to satisfy the elements of a fraud claim under 11 U.S.C. § 523(a)(2)(A), Counts VI and VII did not "set forth claims that would give rise to a nondischargeable judgment under any subsection of § 523 of the Bankruptcy Code." *Id.* at 502. The bankruptcy court concluded that because the state court judgment did not apportion the $717,877.81 in damages among Counts IV, VI, and VII, it was impossible to determine with certainty which issues were adjudicated and consequently which judgment should be given preclusive effect. *Id.* Because it could not with certainty find that the state court awarded judgment on Sterling's fraud claim, the bankruptcy court refused to apply the doctrine of collateral estoppel to award judgment on Sterling's 11 U.S.C. § 523(a)(2) claim.

On appeal, Sterling challenges the bankruptcy court's denial of its motion for summary judgment on the ground that the state court failed to allocate damages among the claims upon which it granted default judgment. Appellees Whelan and Schaner do not respond to Sterling's contentions regarding the allocation of damages by the state court. The court finds the bankruptcy court's findings as to the third prong of the collateral estoppel test to be in error. Of Sterling's seven causes of action asserted in its state court action, only two asserted independent grounds for monetary relief. First, Count IV, asserted against Whelan and Schaner along with other individual defendants, stated a cause of action for fraud under Georgia law. Second, Count V asserted a cause of action for breach of contract against two corporate defendants: Equity Recovery Services, Inc., and Remedial Labor Solutions, Inc. Sterling's causes of action asserted in Counts I and II sought equitable relief such as specific performance, injunctive relief, imposition of a restraining order, an equitable accounting, and the establishment of a receivership. Count III sought recovery of money had only as to corporate defendant CraftMasters, Inc. Finally, Counts VI and VII merely asserted that the corporate veil of both Equity Recovery Services, Inc., and Remedial Labor Solutions, Inc., could properly be pierced so that Whelan and Schaner, as shareholders of the corporations, could be held individually liable for any damages awarded against the corporations.

At first blush, it appears that the state court judgment could be construed as ambiguous on the issue of whether damages were awarded against Whelan and Schaner on Sterling's cause of action for fraud under Count IV, or instead whether the damages were awarded on Sterling's breach of contract claim under Count V and recovered from Whelan and Schaner as alter egos of Equity Recovery Services, Inc., and Remedial Labor Solutions, Inc., pursuant to Counts VI and VII. The state court, however, avoided an ambiguous construction by specifically stating:

> IT IS ORDERED and ADJUDGED that Plaintiff Sterling Factors, Inc. recover of Defendants Ed Schaner and Michael Whelan, jointly and severally, the sum of $748,244.31, *said sum representing damages for Defendant's fraud and for Plaintiff's attorneys' fees* ...

(Order DeKalb Cty.Sup.Ct., July 9, 1998) (emphasis added). The clear language of the Superior Court of DeKalb County shows that damages were awarded as to Sterling's fraud claim against Whelan and Schaner rather than against Whelan and Schaner as alter egos of Equity Recovery Services, Inc., and Remedial Labor Solutions, Inc. The instant case accordingly is not one in which the judgment failed to designate the ground upon which it relied.

Further, the court notes that the instant case is not one in which there are two independently adequate grounds for sustaining the state court's judgment. Whelan and Schaner were two defendants of many in Sterling's state court action. There is *no evidence* that the liability of corporate defendants Equity Recovery

Services and Remedial Labor Solutions had been established at the time default was entered against Whelan and Schaner. The court therefore had no adequate ground for awarding damages against Whelan and Schaner on the basis of Equity Recovery Services' and Remedial Labor Solutions' breach of contract.

The court accordingly finds that the bankruptcy court erred as a matter of law in finding summary judgment in favor of Sterling precluded on the ground that an ambiguity in the state court judgment made it impossible to ascertain whether judgment was awarded on Sterling's fraud claim and thus whether the fraud claim was necessary to the outcome of the state proceeding.

### 4. *Full and Fair Opportunity*

As an alternative ground for denying Sterling's summary judgment motion, the bankruptcy court found that "[a]nother important reason why collateral estoppel does not apply here is that defendants did not have a full and fair opportunity to litigate the issues in state court." *Whelan,* 236 B.R. at 502. The bankruptcy court first determined that Whelan and Schaner were not given a full and fair opportunity to litigate their claim in state court because they were not given the opportunity to submit evidence to the court on the issue of damages. *Whelan,* 236 B.R. at 502–04. Next, the court engaged in a discussion in which it distinguished the instant case from others decided by both the Eleventh Circuit and bankruptcy courts within the Eleventh Circuit. *Id.* at 504–08. Through this second discussion, the bankruptcy court in effect refused to afford collateral estoppel effect to the state court's judgment as to Whelan's and Schaner's liability on Sterling's fraud claim.

 Although not expressly explained in its order, it appears that the bankruptcy court denied Sterling's motion for summary judgment as to both the issue of liability and the issue of damages. In other words, the bankruptcy court refused to afford preclusive effect to either the state court's judgment that Whelan and Schaner were liable for fraud or its judgment that Whelan and Schaner caused Sterling $748,244.31 in damages. The distinction between liability and damages is significant. As explained by one bankruptcy court:

> Just as a normal civil proceeding consists of the two elements, liability and damages, so an adversary proceeding respecting dischargeability consists of three elements, liability, damages, and dischargeability. A non-bankruptcy court may consider the issues of liability and damages, but it may not rule on the question of dischargeability. In a personal injury case the non-bankruptcy court may determine liability, damages, and willfulness, but it cannot establish dischargeability or nondischargeability. The Bankruptcy Court, however, may adopt the findings of the non-bankruptcy court where they have been litigated fully. Thus a Bankruptcy Court might apply offense collateral estoppel on the issue of liability, or on the issues of liability and damages, or on the issues of liability, damages, and willfulness, depending on the extent to which those issues were litigated in the prior action, but the Bankruptcy Court would still have to determine on the basis of those proven facts whether or not those acts come within § 523(a)(2), (4), or (6).

*In re Magnafici,* 16 B.R. 246, 252–53 (Bankr.N.D.Ill.1981); *In re Cohen,* 92 B.R. 54, 60 (Bankr.S.D.N.Y.1988). *See also St. Laurent,* 991 F.2d at 676 ("the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court").

Though the bankruptcy court will ultimately decide whether Sterling's claims against Whelan and Schaner are nondischargeable as obtained by fraud under 11 U.S.C. § 523(a)(2)(A), it may give preclusive effect to both the state court's judgment regarding Whelan's and Schaner's liability on the elements of fraud and the

state court's determination of damages. This court will accordingly consider whether the bankruptcy court erred in failing to apply the doctrine of collateral estoppel to either the damages found by the state court or to the state court's adjudication of Whelan's and Schaner's liability for fraud.

### a. *Damages*

In finding that the state court had failed to afford Whelan and Schaner a full and fair opportunity to litigate the issue of damages in the fraud proceeding, the bankruptcy court relied upon Georgia statutory law, which provides:

> If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, *unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages;* provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

O.C.G.A. § 9–11–55(a) (emphasis added). The bankruptcy court reasoned that because Sterling's state court tort action was an action *ex delicto* and involved unliquidated damages, Sterling had the obligation to introduce evidence establishing an amount of damages. *Whelan,* 236 B.R. at 502–03.

 In addition to O.C.G.A. § 9–11–55(a), default judgment may be entered as a sanction for failure to answer discovery requests under Georgia law. *See* O.C.G.A. § 9–11–37. Specifically, if a party fails to serve answers or objections to interrogatories, the court may impose sanctions which, among others, include the issuance of an "order striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." O.C.G.A. §§ 9–11–37(b)(2)(C) and (d)(1). "Dismissal of the answer and entry of a default judgment against a defendant who is in wilful, in bad faith, or in conscious disregard of an order compelling discovery are an appropriate sanction." *Howard v. City of Columbus,* 239 Ga.App. 399, 416, 521 S.E.2d 51 (1999); *see also Didio v. Chess,* 218 Ga.App. 550, 551, 462 S.E.2d 450 (1995). A finding of actual wilfulness is not required for the imposition of sanctions pursuant to § 9–11–37(b)(2)(C); "only a conscious or intentional act in disregarding the duty to make discovery is necessary for imposing the sanction of default." *Howard,* 239 Ga.App. at 416, 521 S.E.2d 51.

In the instant case, default judgment was entered in favor of Sterling in the state court as a sanction for Whelan's and Schaner's failure to respond to Sterling's interrogatories and document requests. Although the order entering default judgment in favor of Sterling did not explicitly set forth the statutory justification for the entry of default, the court included the following language:

> The above matter came before the Court on Plaintiff's Motion to Strike Answers of Defendants Ed Schaner and Michael

Whelan, or in the alternative, Motion for Sanctions and to Compel. Respondent's time to respond to the motion passed without Respondents filing any brief in opposition. The Court considered the motion and brief and all matters of the record and it appeared to this Court that Defendants Ed Schaner and Michael Whelan *willfully* refused to answer the Interrogatories and Request for Production of Documents as stated in the motion and granted Plaintiff's Motion to Strike the Answers of Defendants Ed Schaner and Michael Whelan and ordered that default judgment be entered against these Defendants in amounts to be determined by affidavit submitted by the Plaintiff.

(Order DeKalb Cty.Sup.Ct., July 9, 1998) (emphasis added). It is apparent from the language of the state court that default judgment was entered against Whelan and Schaner as a sanction pursuant to O.C.G.A. § 9–11–37(b)(2)(C) rather than for failure to answer Sterling's complaint pursuant to § 9–11–55(a).

■ Despite the two separate statutory grounds for entry of default, however, Georgia courts have held that "[w]here a default judgment has been imposed as a sanction pursuant to O.C.G.A. § 9–11–37, the provisions of O.C.G.A. § 9–11–55(a) apply." *Cassidy v. Wilson*, 196 Ga.App. 6, 7, 395 S.E.2d 291 (1990); *see also Ross v. White*, 175 Ga.App. 791, 792, 334 S.E.2d 371 (1985); *House v. Hewett Studios, Inc.*, 125 Ga.App. 127, 128, 186 S.E.2d 584 (1971). Although a plaintiff in whose favor default judgment need not establish an entitlement to damages, he must establish the amount of such damages. *Cassidy*, 196 Ga.App. at 8, 395 S.E.2d 291.

■ The bankruptcy court found that despite the clear language of O.C.G.A. § 9–11–55(a), Whelan and Schaner were not given the opportunity to present any evidence to refute Sterling's computation of damages in the state court. *Whelan*, 236 B.R. at 502. The bankruptcy court found that Sterling simply submitted a "short affidavit" stating that it was entitled to damages in the amount of $717,877.81 and attorneys' fees in the amount of $30,-366.50 but that Whelan and Schaner were neither served with a copy of the affidavit nor given an opportunity to respond. *Id.* The bankruptcy court concluded that because the state court had failed to comply with the clear terms of § 9–11–55(a), defendants Whelan and Schaner had been denied the full and fair opportunity to litigate their claims in state court. *Id.* at 502–04.

This court agrees that Appellees Whelan and Schaner did not receive a full and fair opportunity to participate in the determination of damages by the state court. The state court ignored the clear mandate of O.C.G.A. § 9–11–55(a) and instead simply chose to award damages to Sterling "in amounts to be determined by affidavit submitted by the Plaintiff." (Order DeKalb Cty.Sup.Ct., July 9, 1998). The doctrine of collateral estoppel accordingly does not apply in the instant case to bar relitigation of the issue of damages in the instant proceeding.

The bankruptcy court did not err in denying Sterling's motion for summary judgment on the issue of the application of collateral estoppel to the state court's ruling on damages. The bankruptcy court accordingly is not compelled to give preclusive effect to the state court's judgment as to damages in determining the instant debt's dischargeability in the bankruptcy court.

### b. *Liability*

In denying Sterling's motion for summary judgment as to the application of collateral estoppel to bar relitigation of the issue of Whelan and Schaner's liability for fraud, the bankruptcy court relied upon its factual findings regarding the acts that led to the state court's entry of default. In its appeal, Sterling does not challenge the bankruptcy court's findings regarding the lack of opportunity afforded Whelan and Schaner to litigate the issue of *damages* in

state court, but asserts that the state court's entry of default judgment satisfies the "full and fair opportunity" requirement as to Whelan's and Schaner's *liability* on the elements of fraud.

The Eleventh Circuit has considered the issue before this court: "whether, in a bankruptcy discharge exception proceeding, a default judgment based upon allegations of fraud may be used to establish conclusively the elements of fraud and prevent discharge of the judgment debt." *In re Bush,* 62 F.3d 1319 (11th Cir.1995). As the underlying default judgment in *Bush* was entered in a federal court, the court in *Bush* applied the four-step test for the application of collateral estoppel as formulated under federal law. *Id.* at 1322. Only the second requirement of the four-part test,[3] that the bankruptcy issue was "actually litigated" in the prior action, was at issue in *Bush. Id.*

The court recognized the general federal rule that "[o]rdinarily a default judgment will not support the application of collateral estoppel because '[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated.' " *Id.* at 1323 (*quoting* Restatement (Second) of Judgments § 27, cmt. e (1982)). The court relied upon other federal authority contrary to the general rule, however, and looked to cases where courts had given preclusive effect in a bankruptcy proceeding to a prior default judgment. *Id.* at 1324. The *Bush* court found persuasive the reasoning of those courts that:

> Debtor/defendant was given the full opportunity to defend himself in the [prior] action and he chose not to do so. Debtor/defendant could have reasonably foreseen the consequences of not defending an action based in part on fraud. *It would be undeserved to give debtor/defendant a second bite at the apple when he knowingly chose not to defend himself in the first instance.*

*Id.* at 1324 (*quoting In re Wilson,* 72 B.R. 956, 959 (Bankr.M.D.Fla.1987)) (emphasis added in *Bush* ). The court in *Bush* was likewise reluctant to allow the debtor in that case a "second bite at the apple." *Id.* The court relied upon evidence that the debtor had actively participated in the underlying fraud action for almost one year, answered the complaint, filed a counterclaim, and filed discovery requests but then later dismissed his counsel and refused to participate in discovery. *Id.* The court noted that default judgment was awarded against the debtor in *Bush* pursuant to Fed.R.Civ.P. 37 as a sanction for his deliberate refusal to participate in discovery. *Id.* at 1325. In finding the "actual litigation" requirement of the collateral estoppel test satisfied, the court concluded:

> Where a party has substantially participated in an action in which he had a full and fair opportunity to defend on the merits, but subsequently chooses not to do so, and even attempts to frustrate the effort to bring the action to judgment, it is not an abuse of discretion for a district court to apply the doctrine of collateral estoppel to prevent further litigation of the issues resolved by the default judgment in the prior action.

*Id.* at 1324 (footnote omitted).

The Bankruptcy Court for the Northern District of Georgia has also considered the application of the doctrine of collateral estoppel to a dischargeability proceeding. *See In re Graham,* 191 B.R. 489 (Bankr. N.D.Ga.1996) (Drake, J.). In *Graham,* default judgment was entered against the debtor in a state court fraud proceeding as a result of the debtor's refusal to respond

3. The four-part test for establishing the application of the doctrine of collateral estoppel set forth by the court in *Bush* was as follows: (1) that the issues in the prior action and in the bankruptcy court are identical; (2) that the bankruptcy issue was actually litigated in the prior action; (3) that determination of the issue in the prior action was a critical and necessary part of the prior court's judgment; and (4) that the burden of persuasion in the bankruptcy discharge proceeding is not significantly heavier than the burden of proof in the initial action. *Id.* at 1322.

to the plaintiff's claim. The plaintiff filed a complaint in the bankruptcy court to establish the nondischargeability of the debt in bankruptcy. The bankruptcy court applied the doctrine of collateral estoppel under Georgia law and found the debt to be nondischargeable as obtained by fraud pursuant to 11 U.S.C. § 523(a)(2)(A). 191 B.R. at 496. The court found the first three elements of the test—identity of issues, actual litigation, and essentiality to the prior judgment—easily met. *Id.* Turning to the "fair opportunity" prong, the court found that the debtor, as the defendant in the state court proceeding, "had every opportunity to litigate the state action completely." *Id.* The court noted that the defendant, with the assistance of counsel, answered the complaint and participated in discovery during the beginning of the case, and that "[o]ther than his own willfulness and obstructionism, nothing prevented him from arguing his case to its completion." *Id.*

The bankruptcy court distinguished both *Graham* and *Bush* from the instant case. The court relied upon the fact that the defendant in *Graham* had " 'every opportunity to litigate the state action completely' and that nothing prevented him from doing so other than his own 'willfulness and obstructionism.' " *Whelan,* 236 B.R. at 505. The bankruptcy court similarly distinguished *Bush* on the ground of its finding that the facts of the instant case did not "suggest obstreperous or obstructive behavior on the part of defendants Whelan and Schaner." *Id.* at 508. The bankruptcy court relied upon its findings that Whelan and Bush participated in the first round of discovery, asked for more time to respond to the second discovery requests, and inadvertently failed to contest Sterling's motion for default judgment in writing due to their expectation to address the issue at a hearing before the state court. *Id.* The bankruptcy court concluded that unlike the defendants in *Graham* and *Bush,* "the facts leading to the default judgment in the DeKalb County litigation do not reflect a deliberate abuse of the

judicial process by defendants Whelan and Schaner. Giving defendants here an opportunity to defend the dischargeability claim in bankruptcy court is not rewarding the debtors for any misconduct. While defendants' attorney may have made some mistakes ..., these mistakes do not amount to the type of misconduct that should deprive defendants of the right to defend the dischargeability action in bankruptcy court." *Id.* (internal citation omitted).

After careful consideration, the court finds that the bankruptcy court erred in failing to give collateral estoppel effect to the state court's judgment establishing Whelan's and Schaner's liability on the elements of fraud. The state court found Whelan's and Schaner's failure to participate in discovery to have been willful, and this court finds no reason to secondguess that determination or attempt to quantify the degree of willfulness in this case as opposed to the willfulness exhibited in other cases such as *Graham* and *Bush.* Georgia law does not require a state court entering default on the basis of willful disobedience of discovery orders to state explicitly its grounds for finding willfulness. *See Ross,* 175 Ga.App. at 792, 334 S.E.2d 371. The Georgia court found that Whelan and Schaner were in willful disobedience of its discovery rules and accordingly entered judgment on the merits of Sterling's claim against them pursuant to O.C.G.A. § 9–11–37. Neither this court nor the bankruptcy court is in a position to review that determination.

In contrast to the bankruptcy court, this court finds the reasoning of both *Graham* and *Bush* to support its conclusion. This court reads both cases to hold that where a default judgment is entered in state court pursuant to a state statute permitting extreme sanctions in the event of the willful disobedience of a discovery order, a court later considering the preclusive effect of the default judgment pursuant to the doctrine of collateral estoppel can pre-

sume that the defaulting party had an opportunity fully to litigate the merits of the claims against him but forewent that opportunity. Although neither is binding on this court under the instant circumstances, both support the finding that Whelan and Schaner forewent their opportunity for a full and fair litigation of the issue of their liability for fraud when they failed timely to comply with discovery requests in state court. Distinction of *Graham* and *Bush* on the grounds that the acts there presumably appeared more blatant than those in the instant case is insufficient to establish the inapplicability of collateral estoppel; there is no support for the contention that the acts in *Graham* and *Bush* somehow warranted entry of default more than did the acts of Whelan and Schaner in this case.

Further, the court does not read the decisions in *Bush* and *Graham* as attempting to establish threshold requirements for the measure of egregiousness that the behavior of defendants in state court proceedings must reach in order properly to warrant entry of default judgment that will be afforded preclusive effect in later proceedings. Instead, both courts merely supported their conclusions with equitable justifications for their refusal to permit the relitigation of an issue upon which default judgment was rendered. This court finds no justification for refusing likewise to hold Whelan and Schaner to the outcome of their default judgment proceeding.

In sum, the court finds that the bankruptcy court erred in refusing to apply the doctrine of collateral estoppel on the ground that Whelan and Schaner were not given a full and fair opportunity to litigate the issue of their liability for fraud in the state court action. Default judgment was entered against Whelan and Schaner because of the state court's finding that they wilfully refused to participate in discovery. In accordance with both *Bush* and *Graham,* this court finds that entry of default in such circumstances satisfies the "full and fair opportunity" element of collateral

estoppel under Georgia law. The bankruptcy court and this court accordingly should give preclusive effect to the prior judgment of the Georgia state court establishing Whelan's and Schaner's liability for fraud.

## III. Conclusion

The order and judgment of the bankruptcy court is hereby MODIFIED in accordance with this Order. Appellant Sterling's motions for summary judgment are GRANTED as to the issue of the application of the doctrine of collateral estoppel to give preclusive effect to the judgment of the Superior Court of DeKalb County on the issue of Appellees Whelan's and Schaner's liability as to the elements of fraud under 11 U.S.C. § 523(a)(2)(A). Appellant Sterling's motions are DENIED as to all remaining grounds, including the application of the doctrine of collateral estoppel to the Superior Court of DeKalb County's determination of damages.

Appellees Whelan's and Schaner's motions to dismiss [3–1] are DENIED.